# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JUDITH A. HILDEBRAND,<br><br>    Plaintiff,<br><br>vs.<br><br>ROUSSELOT, INC.,<br><br>    Defendant. | No. 09-CV-1016-LRR<br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the court is Plaintiff Judith A. Hildebrand's "Motion to Remand" ("Motion") (docket no. 7).

## *II. PROCEDURAL BACKGROUND*

On April 2, 2009, Plaintiff filed a "Petition at Law and for Injunction—Auxiliary Remedy" ("Petition") (docket no. 2) against Defendant Rousselot, Inc. in the Iowa District Court for Dubuque County, case no. LACV055986. In the Petition, Plaintiff alleges that Defendant violated her rights under Iowa Code Chapter 91A, the Iowa Wage Payment Collection Law, and illegally garnished her wages. Plaintiff alleges that she is entitled to compensatory damages, punitive damages, injunctive relief, attorney fees and costs. On April 27, 2009, Defendant relied on 28 U.S.C. §§ 1441 and 1446 to remove the action to this court on the basis of federal question jurisdiction.

On June 23, 2009, Plaintiff filed the Motion. On July 8, 2009, Defendant filed a Resistance (docket no. 8). On July 15, 2009, Plaintiff filed a Reply (docket no. 9). The Motion is fully submitted and ready for decision.

## *III. REMOVAL JURISDICTION*

The Supreme Court has summarized the principles of removal jurisdiction as follows:

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. Absent diversity of citizenship, federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.

*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Central Iowa Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (stating same); *Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir. 1998) (stating same).

However, "the Supreme Court has recognized a corollary to the well-pleaded complaint rule known as the complete preemption doctrine." *Magee*, 135 F.3d at 601 (citing *Williams*, 482 U.S. at 393). Under the complete preemption doctrine, "'[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Id.* (quoting *Williams*, 482 U.S. at 393).

"Critically, the party seeking removal has the burden to establish federal subject matter jurisdiction." *Central Iowa Coop.*, 561 F.3d at 912 (citing *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002)). "[A]ll doubts about federal jurisdiction must be resolved in favor of remand[.]" *Id.* (citing *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007)).

## IV. FACTS

Defendant is a corporation with its principal place of business located in Dubuque, Iowa. At all times relevant to the instant action, Plaintiff resided in Iowa and worked for Defendant as a quality assurance technician. The terms of Plaintiff's employment were set forth in a collective bargaining agreement ("CBA") between Defendant and Plaintiff's union, United Auto Workers Local 13 (the "Union").

Plaintiff filed a claim for workers' compensation after she developed carpal tunnel

2

syndrome in her wrists. The workers' compensation insurance carrier for Defendant contested the claim. Because Plaintiff's claim was contested, she did not immediately receive workers' compensation benefits. Pursuant to paragraph XIII.12 of the CBA, however, Plaintiff received short-term disability ("STD") benefits.

If an employee who receives STD benefits is later awarded benefits for the condition at issue from a federal or state program, such as workers' compensation, the CBA requires that the employee repay the STD benefits. The CBA contains a "benefit offset/subrogation" provision ("Subrogration Provision") for STD benefits, which provides: "Benefits offset by payments made under the STD policy will be reduced by any benefits received from federal or state mandated disability programs. The company has the right to subrogate for any payment made by a third party for an illness or injury." CBA (docket no. 8-2), Ex. A.1. at ¶ XIII.12.E. The CBA does not provide how this subrogation should be executed. However, "it has been the common practice that[,] when an employee has received [STD] payments [. . .] and subsequently receives offsetting benefits from a federal or state mandated program, the employee repays the [STD] payments [. . .] so that the employee is not compensated twice for the same disability." Affidavit of James Schreiber (docket no. 8-2), at ¶ 8.

Subsequently, Plaintiff was awarded workers' compensation benefits for her carpal tunnel syndrome. However, she refused to repay the STD benefits that she received. Defendant discussed Plaintiff's refusal to repay the STD benefits with the Union. The Union agreed that Plaintiff should repay the STD benefits. Defendant prepared a repayment schedule. In the schedule, Defendant indicated that, beginning in August of 2008, it would withhold a "small amount" from Plaintiff's paycheck until the STD benefits were fully repaid. *Id.* at ¶ 10. Defendant provided a copy of the schedule to Plaintiff and the Union.

In August of 2008, Defendant "stopped paying a portion of Plaintiff's wages each

week and began to apply the net amount [. . .] to repay itself for the STD benefits paid to Plaintiff." Petition at ¶ 9. However, "Plaintiff did not authorize Defendant to withhold any amount from her wages." *Id.*

## IV. ANALYSIS

### A. Parties' Arguments

In the Motion, Plaintiff asks the court to remand the instant action to the Iowa District Court. Plaintiff argues that there is no federal question jurisdiction over her claims. Defendant argues that remand is not appropriate because "Plaintiff's state law claims are substantially dependent on an analysis of the [CBA]" and, as a result, "Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), completely pre-empts Plaintiff's state law claims." Resistance at 1.

### B. Preemption Under § 301

"The complete preemption doctrine applies only when a federal statute possesses extraordinary preemptive power, a conclusion courts reach reluctantly." *Magee*, 135 F.3d at 601 (internal quotation marks omitted). "Congressional intent is the touchstone of the complete preemption analysis." *Id.* at 601-02 (citing *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 544 (8th Cir. 1996)). The court "must determine whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court, mindful that, in the ordinary case, federal preemption is merely a defense to a plaintiff's lawsuit." *Id.* at 602 (internal citations omitted).

"Congress enacted § 301 [of the LMRA] to provide federal jurisdiction over 'suits for violation of contracts between an employer and a labor organization' [. . .] in order to fashion a body of federal common law for the purpose of resolving labor disputes in a uniform manner across the country." *Trustees of the Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). "In recognition of this legislative

4

goal[,] the Supreme Court determined that any state law claim founded on rights created by a [collective bargaining agreement] is preempted under § 301[.]" *Id.* (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102-03 (1962)).

The Supreme Court distinguishes § 301 preemption cases "which require interpretation or construction of [a collective bargaining agreement] from those which only require reference to it." *Id.* The Eighth Circuit Court of Appeals summarized this distinction as follows:

> An otherwise independent claim will not be preempted if the [collective bargaining agreement] need only be consulted during its adjudication. *See Lividas v. Bradshaw*, 512 U.S. 107, 124-25 (1994). In *Lividas*, for example, there was no § 301 preemption because a wage rate provision of the [collective bargaining agreement] only had to be referenced to compute the proper damages. *Id.* The *Lueck* case serves as a useful contrast. Although neither party in *Lueck* had alleged a violation of the [collective bargaining agreement], the Supreme Court decided that an employee's common law fiduciary duty claim against his employer was preempted under § 301 because the claim could not be resolved without interpreting the [collective bargaining agreement,] for the employer's fiduciary duties turned on the extent of its contractual good faith obligations. *Id.* at 215-18. The [Supreme] Court reached a similar result in *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987) and in *United Steelworkers of Am. v. Rawson*, 495 U.S. 362 (1990). In both of those cases, common law negligence claims asserted by employees against their unions were preempted under § 301, for their resolution depended upon whether the [collective bargaining agreements] could be interpreted to have imposed a duty of care on the unions. *Hechler*, 481 U.S. at 859-60; *Rawson*, 495 U.S. at 369-72. These three Supreme Court decisions teach that state law claims will be preempted under § 301 if their resolution depends on an interpretation of a [collective bargaining agreement].

*Id.* at 450 F.3d at 330-31.

## C. *Whether Interpretation of CBA is Necessary*

The court now turns to consider whether resolution of Plaintiff's claims requires the court to interpret the CBA. Plaintiff's claim is premised on the Iowa Wage Act. The Iowa Wage Act provides, in relevant part:

> 1. An employer shall not withhold or divert any portion of an employee's wages unless:
>
>    a. The employer is required or permitted to do so by state or federal law or by order of a court of competent jurisdiction; or
>
>    b. The employer has written authorization from the employee to so deduct for any lawful purpose accruing to the benefit of the employee.

Iowa Code § 91A.5 (2008).

Plaintiff argues that no interpretation of the CBA is necessary, because "[n]otwithstanding the interpretation of the CBA, [. . . Defendant's] actions remain illegal[.]" Motion at ¶ 10. In contrast, Defendant argues that the resolution of Plaintiff's claims "will require an analysis of what [Defendant] and [the Union] agreed [to] regarding the repayment of [STD] payments made pursuant to the [CBA], the subrogation procedure to be followed to recoup such repayments, and the legal consequences that flow from the parties' agreement." Resistance at 5.

The court finds that the resolution of Plaintiff's claims "depend[s] on an interpretation of" the CBA. *Superior Waterproofing*, 450 F.3d at 331. The CBA provides that Defendant has the right to subrogate for STD payments. The CBA is silent on the manner in which subrogation should occur. However, this gap in the CBA's terms does not obviate the need for its interpretation. The Eighth Circuit Court of Appeals has held that such gaps are expected and should be filled in a manner consistent with the particular union's practices:

6

> The collective bargaining agreement states the rights and duties of the parties. It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law[—]the common law of a particular industry or of a particular plant.
>
> * * * There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages * * *.
>
> Gaps may be left to be filled in by reference to the practices of the particular industry and of the various shops covered by the agreement.
>
> * * *
>
> [A labor arbitrator's source of law] is not confined to the express provisions of the contract, as the industrial common law[—]the practices of the industry and the shop[—]is equally a part of the collective bargaining agreement although not expressed in it.

*Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616, 618-19 (1979) (citing *UAW v. White Motor Corp.*, 505 F.2d 1193, 1197-98 (8th Cir. 1974)) (internal quotation marks and citations omitted).

In light of the foregoing, the court concludes that it must consider whether the CBA encompasses a practice by the Union to agree to the manner in which subrogation should occur on behalf of its employees. In other words, the court must determine whether, pursuant to the CBA, the Union bargained away its members' rights under the Iowa Wage Act with respect to wage withholding. *Id.*; *see also Vera v. Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (holding that collective bargaining agreement's silence on key issue

7

required the district court to "interpret the [collective bargaining agreement] to determine whether it embodies an agreement between the parties to alter the common law rule regarding when commissions are earned"); *Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986) ("[The employee's] interpretation of the contract may have been correct, an issue we do not want to prejudge. But it was an interpretation. The company was not violating what any fool would know was an express obligation of the contract. It was exploiting a gap in the language of the contract. A court or arbitrator might fill the gap just as [the employee] did, by interpreting the silence of the contract as pregnant in light of other provisions[.]").

The court does not conclude that the CBA governs the manner in which an employee's repayment of STD benefits should occur. Rather, the court merely concludes that it will be required to interpret the CBA's terms, which includes the practices of the Union, to determine whether the CBA has waived Plaintiff's rights under the Iowa Wage Act.

Because the court finds that it must interpret the CBA in the instant action, the court finds that federal question jurisdiction exists. *Superior Waterproofing*, 450 F.3d at 330. Therefore, the court shall deny the Motion.

## V. CONCLUSION

In light of the foregoing, the Motion (docket no. 7) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 26th day of January, 2010.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA