# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JUDITH A. HILDEBRAND,<br><br>        Plaintiff,<br><br>vs.<br><br>ROUSSELOT, INC.,<br><br>        Defendant. | No. 09-CV-1016-LRR<br><br>**ORDER** |

## *I. INTRODUCTION*

The matter before the court is Defendant Rousselot, Inc.'s Motion for Summary Judgment ("Motion") (docket no. 15). Because the court shall dismiss the instant action for lack of subject matter jurisdiction in light of the evidence presented in conjunction with the Motion, it does not reach the merits of the Motion.

## *II. PROCEDURAL BACKGROUND*

On April 2, 2009, Plaintiff Judith A. Hildebrand filed a "Petition at Law and for Injunction—Auxiliary Remedy" ("Petition") (docket no. 2) against Defendant in the Iowa District Court for Dubuque County, case no. LACV055986. Plaintiff claims that Defendant withheld payment of wages in violation of Iowa Code Chapter 91A, the Iowa Wage Payment Collections Act ("Iowa Wage Act"). Plaintiff seeks compensatory and punitive damages, injunctive relief, attorney fees and costs. On April 27, 2009, Defendant removed the action to this court pursuant to 28 U.S.C. §§ 1441 and 1446. On April 28, 2009, Defendant filed an Answer (docket no. 4) in which it denied the substance of the Complaint.

On June 23, 2009, Plaintiff filed a motion for remand ("Motion for Remand") (docket no. 7), claiming that the court lacked subject matter jurisdiction. On January 26,

2010, the court denied the Motion for Remand. Order (docket no. 13).

On June 1, 2010, Defendant filed the Motion. On July 9, 2010, Plaintiff filed a Resistance (docket no. 18). On July 19, 2010, Defendant filed a Reply (docket no. 19).

### *III. FACTUAL BACKGROUND*

#### *A. Parties*

Plaintiff is a resident of Iowa. Defendant is a Delaware corporation with its principal place of business in Dubuque, Iowa. At all times relevant to the instant action, Plaintiff was an employee of Defendant and a member of Local 13 of the United Auto Workers ("Union").

#### *B. CBA*

Plaintiff's employment was subject to a collective bargaining agreement ("CBA").[1] The CBA provides for short-term disability ("STD") benefits for Union members for "an accident or illness[.]" Defendant's Appendix ("Def. App'x") (docket no. 15-3), at 37. More specifically, the CBA provides: "Eligible employees who are unable to work because of an illness or injury that is not covered by Workers['] Compensation shall receive STD benefits." *Id.* at 38. In the event a Union member receives benefits from a federal or state-mandated disability program in addition to having received STD benefits, the CBA provides that the Union member's STD benefits will be offset by the amount of benefits received through the government-mandated disability program. Additionally, the CBA provides that Defendant "has the right to subrogate for any payment made by a third party for an illness or injury." *Id.* at 39. The CBA does not contain any express terms outlining a procedure for the repayment, garnishment or subrogation of STD benefits.

---

[1] Two CBAs governed Plaintiff's employment during the time relevant to the instant action. Because the differences in the CBAs are irrelevant to the court's decision, it does not discuss them. The court refers to the CBAs together as the "CBA."

2

### C. Injury

In or around March of 2003, Plaintiff was diagnosed with carpal tunnel syndrome in both arms. On November 13, 2003 and June 2, 2004, Plaintiff underwent carpal tunnel release surgery. On August 12, 2004, Plaintiff filed a petition for Workers' Compensation Benefits with the Iowa Division of Workers' Compensation. Defendant's workers' compensation insurance carrier contested her claim. Because Plaintiff's claim was contested, she did not immediately receive workers' compensation benefits. While Plaintiff was absent from work due to carpal tunnel syndrome, Defendant paid Plaintiff $10,629.28 in STD benefits.

Plaintiff appealed the denial of her workers' compensation claim. On May 5, 2006, the Deputy Workers' Compensation Commissioner ("Commissioner") awarded Plaintiff healing period benefits, permanent partial disability benefits and industrial disability benefits. The Commissioner awarded Defendant a credit for STD benefits previously paid to Plaintiff. Later, however, the Iowa District Court for Dubuque County invalidated this credit.

### D. Garnishment

In August of 2008, Defendant "stopped paying a portion of Plaintiff's wages each week and began to apply the net amount [. . .] to repay itself for the STD benefits paid to Plaintiff." Petition at ¶ 9. More specifically, Defendant began to deduct $200.00 per week from Plaintiff's paychecks and charged her a five percent interest rate on the remaining balance of STD benefits it believed Plaintiff should repay. In his deposition, Defendant's Human Resources Manager, James Schreiber, stated that he did not recollect how Defendant calculated this weekly deduction, but remembered that Defendant's representatives "came up with an amount [they] thought was reasonable." Plaintiff's Appendix ("Pl. App'x") (docket no. 18-3), at 62.

Schreiber indicated that Defendant does not have an established program or

procedure for recovering STD payments or withholding wages, but rather, recovers payments "on an ad hoc basis." *Id.* at 65. Although Defendant had garnished other employees' wages, Schreiber stated that Defendant "never had a situation" where Defendant sought reimbursement for STD payments. *Id.* at 63. Schreiber also distinguished a "formal" garnishment from an "informal" garnishment:

> I would be involved in a garnishment [be]cause generally that is a court order, and there is a protocol in our payroll system that I usually involve our payroll provider in terms of setting that up, because it's generally recurring. We do—we do very few garnishments, and when they're set up, they're pretty much automatic. This was not a formal garnishment in [Plaintiff's] situation. . . . We didn't look at this any different than any other adjustment that we made when overpayments were made in accordance with the [CBA] . . . and we did make an adjustment to people's pay because they were overpaid in accordance with the terms of the agreement.

*Id.* at 59.

## IV. ANALYSIS

### A. Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction[,]" and the threshold requirement in every federal case is jurisdiction. *Godfrey v. Pulitzer Publ'g Co.*, 161 F.3d 1137, 1141 (8th Cir. 1998) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "[T]he court may, at any time, raise the issue of subject matter jurisdiction." *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828 (8th Cir. 2004) (citations omitted). In fact, every federal court "has a special obligation to consider its own jurisdiction" and raise sua sponte jurisdictional issues "when there is an indication that jurisdiction is lacking, even if the parties concede the issue." *Thomas v. Basham*, 931 F.2d 521, 522-23 (8th Cir. 1991).

> "Without jurisdiction[, a] court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when

> it ceases to exist, the only function remaining to the court is
> that of announcing the fact and dismissing the cause."

*Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

### *B. Preemption Under § 301 of LMRA*

As previously argued in its Resistance to the Motion for Remand, Defendant believes the court has subject matter jurisdiction over the instant action because "Plaintiff's state law claims are substantially dependent on an analysis of the [CBA]" and consequently, "[s]ection 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), completely pre-empts Plaintiff's state law claims." Defendant's Resistance to Motion for Remand (docket no. 8), at 1. "The complete preemption doctrine applies only when a federal statute possesses extraordinary preemptive power, a conclusion courts reach reluctantly." *Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir. 1998) (internal quotation marks omitted). "Congressional intent is the touchstone of the complete preemption analysis." *Id.* at 601-02 (citing *Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 544 (8th Cir. 1996)). The court "must determine whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court, mindful that, in the ordinary case, federal preemption is merely a defense to a plaintiff's lawsuit." *Id.* at 602 (internal citations omitted).

"Congress enacted § 301 [of the LMRA] to provide federal jurisdiction over 'suits for violation of contracts between an employer and a labor organization' [. . .] in order to fashion a body of federal common law for the purpose of resolving labor disputes in a uniform manner across the country." *Trustees of the Twin City Bricklayers Fringe Ben. Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 330 (8th Cir. 2006) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). "In recognition of this legislative goal[,] the Supreme Court determined that any state law claim founded on rights created by a [collective bargaining agreement] is preempted under § 301[.]" *Id.* (citing *Teamsters*

5

*v. Lucas Flour Co.*, 369 U.S. 95, 102-03 (1962)).

A claim is preempted by § 301 when: (1) the "CBA provision at issue actually sets forth the right upon which the claim is based"; and (2) the claim "requires interpretation of a provision of the CBA." *Williams v. Nat'l Football League*, 582 F.3d 863, 874 (8th Cir. 2009) (internal quotation marks omitted). The Supreme Court distinguishes § 301 preemption cases "which require interpretation or construction of [a collective bargaining agreement] from those which only require reference to it." *Trustees*, 450 F.3d at 330. The Eighth Circuit Court of Appeals summarized this distinction as follows:

> An otherwise independent claim will not be preempted if the [collective bargaining agreement] need only be consulted during its adjudication. *See Lividas v. Bradshaw*, 512 U.S. 107, 124-25 (1994). In *Lividas*, for example, there was no § 301 preemption because a wage rate provision of the [collective bargaining agreement] only had to be referenced to compute the proper damages. *Id.* The *Lueck* case serves as a useful contrast. Although neither party in *Lueck* had alleged a violation of the [collective bargaining agreement], the Supreme Court decided that an employee's common law fiduciary duty claim against his employer was preempted under § 301 because the claim could not be resolved without interpreting the [collective bargaining agreement,] for the employer's fiduciary duties turned on the extent of its contractual good faith obligations. *Id.* at 215-18. The [Supreme] Court reached a similar result in *Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler*, 481 U.S. 851 (1987) and in *United Steelworkers of Am. v. Rawson*, 495 U.S. 362 (1990). In both of those cases, common law negligence claims asserted by employees against their unions were preempted under § 301, for their resolution depended upon whether the [collective bargaining agreements] could be interpreted to have imposed a duty of care on the unions. *Hechler*, 481 U.S. at 859-60; *Rawson*, 495 U.S. at 369-72. These three Supreme Court decisions teach that state law claims will be preempted under § 301 if their resolution depends on an interpretation of a [collective bargaining agreement].

*Id.* at 450 F.3d at 330-31. A CBA "covers the whole employment relationship," including the practices of the industry and the shop. *Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616, 618-19 (8th Cir. 1979) (citation omitted).

### C. *Whether Interpretation of the CBA is Necessary*

In the Motion for Remand, Plaintiff asked the court to remand the instant action to the Iowa District Court for Dubuque County for lack of subject matter jurisdiction. Based on the record on the Motion for Remand, the court was led to believe that interpretation of the CBA, specifically, interpretation of the Union's practices and customs with respect to wage withholding, would be required to resolve Plaintiff's claim and that Plaintiff's claim was thereby preempted by § 301 of the LMRA.

The court has considered the evidence in the instant Motion and finds the CBA does not have a gap that requires interpretation for wage withholding for the repayment of STD benefits. Stated another way, the CBA is silent on the manner in which subrogation for STD benefits would occur. Although a gap in the CBA's terms does not necessarily obviate the need for its interpretation, *Cronin*, 588 F.2d at 618-19, there is a difference between interpreting a gap in the terms of the CBA, and consulting the CBA to determine its silence on an issue. *Trustees*, 450 F.3d at 330-31. Defendant previously withheld wages on an "ad hoc" basis. Pl. App'x at 65. Defendant described withholding wages with a court order—a "formal" garnishment—as well as without a court order—an "informal" garnishment. The record does not indicate the Union or Defendant followed any procedure, custom or practice for the "informal" garnishment at issue in this case. Defendant has not shown any evidence to support the existence of any practice or procedure, express or implied, governing wage withholding. Because the CBA does not have a common practice for wage withholding, there is nothing for the court to interpret. Therefore, the CBA does not govern in this case and Plaintiff's claim is not preempted by the LMRA.

Because the court finds that the removing party did not provide evidence of subject matter jurisdiction, federal question subject matter jurisdiction does not exist. *Superior Waterproofing*, 450 F.3d at 330. When a case is dismissed for lack of subject matter jurisdiction, the court must dismiss it without prejudice, because such a dismissal is not an adjudication on the merits. *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004). However, when, as in this case, a case has been removed to federal court, it must be remanded when there is no subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). Therefore, the court shall remand this case to state court.

## V. CONCLUSION

(1) The instant action is **REMANDED** to the Iowa District Court for Dubuque County;

(2) The Motion (docket no. 15) is **DENIED AS MOOT**; and

(3) The Clerk of Court is directed to **CLOSE THIS CASE** and provide a certified copy of this Order to the Clerk of Court for the Iowa District Court for Dubuque County.

**IT IS SO ORDERED.**

**DATED** this 30th day of July, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA